SMYERS v. RALEIGH.

No. 29723.    May 6, 1941.

*113 P. 2d 363.*

Hugh Webster, of Tulsa, for plaintiff in error.

Felix A. Bodovitz, of Tulsa, for defendant in error.

PER CURIAM. The plaintiff in error has appealed from an adverse judgment in a contest between the assignee of a judgment in favor of Fred Thompson and a garnishee, who appears herein as defendant in error.

The plaintiff in error claims by reason of an assignment of a judgment against the Tulsa City Lines, Inc., in favor of Fred Thompson. On the 25th day of February, 1939, the Morris Plan Company recovered a judgment against Fred Thompson for $120.41, and this judgment was assigned to the defendant in error. On the 12th day of June, 1939, the defendant in error caused a garnishment writ to be served on Tulsa City Lines, Inc., for this indebtedness and another claim which had been reduced to judgment. On the 2nd day of June, 1939, Fred Thompson obtained a judgment against the Tulsa City Lines, Inc., for $380. It is alleged and claimed that a part of this judgment to the amount of $190 was duly assigned to the plaintiff in error on the same date it was obtained. The assignment was placed of record in the clerk's office by the plaintiff in error on the 14th day of June, 1939, two days after the garnishment writ was served. The Tulsa City Lines paid the amount of the judgment obtained by Fred Thompson against it into court on the 10th day of August, 1939, and received a release

and satisfaction and is no longer involved in this proceeding.

The trial court, sitting without a jury, found that the garnishment writ antedated the assignment, that the assignment was procured in fraud of creditors and without any consideration, and upon such findings entered judgment for the defendant in error.

The plaintiff in error was a brother-in-law of Fred Thompson. It was his claim that he advanced $225 to Fred Thompson on July 3, 1938, so that he could pay out an indebtedness on his Home Owners Loan contract; that on June 2, 1939, he, with Fred Thompson, went to Tulsa and first went to the attorney of Fred Thompson, B. C. Franklin, and drew an assignment for $190, from which place they then went to the office of an attorney named Whitney, had the assignment acknowledged before the said attorney as a notary public; that Smyers kept the assignment from June 2, 1939, until June 14, 1939, and placed it of record in the clerk's office on June 14, 1939, two days after the garnishment writ was served. He first stated that he and Fred Thompson went to Tulsa on the morning of June 2, 1939, and shopped at some stores and looked at shop windows in the morning. When it was established that Fred Thompson was at the trial all of the morning of June 2, 1939, until the jury came in with the verdict sometime in the afternoon, plaintiff in error was recalled and explained that by virtue of working at night he became confused as to the time of day that he and Thompson came in. He then stated that they came in about 1:30 of June 2, 1939.

The trial court, in response to a request of plaintiff in error, made findings of fact and conclusions of law in which it found, among other things, that the assignment was executed on the 14th day of June, 1939, and was a fraudulent attempt to evade the judgment of the defendant in error, without consideration, and that the claim of the defendant in error was superior to the claim of the plaintiff in error.

We are of the opinion, and hold, that the judgment of the trial court must be sustained. The plaintiff in error was a brother-in-law of Fred Thompson. The record discloses that he is a cook in a cafe in Tulsa. He testified that they were in town on the morning of the trial and went shopping in Tulsa; that the verdict in the case of Thompson v. Tulsa City Lines, Inc., referred to above came in after 12 o'clock of June 2, 1939, and that they went to the office of the lawyer representing Fred Thompson by the name of Franklin and drew a partial assignment to pay Franklin's fee and the assignment to the plaintiff in error involved in this action; that they then went to another lawyer's office and had it acknowledged and that the plaintiff in error took it home with him. It is alleged that the findings of fact are incorrect in certain instances and cannot form the basis of a judgment. Plaintiff in error, in effect, states that the trial court erred in finding that the witnesses for plaintiff in error testified in one place that the delivery of the assignment was made in the office of Franklin, the attorney of Fred Thompson, and in another place that it was delivered to the plaintiff in error in his home. He cites many cases which have declared that a judgment cannot be sustained where there is no evidence to support it. This rule might be applicable if this were the only finding upon which the trial court could base its judgment. Such is not the case. The court found the story of the plaintiff in error and his brother-in-law incredible. We agree with the finding, and it is not only sustained by the evidence, but the facts are most convincing that this scheme for the assignment of the judgment was concocted with intent to defeat the Morris Plan judgment. Both the witness Fred Thompson and the intervener were uncertain and the evidence is in many respects unsatisfactory and improbable and Smyers had to be recalled to the stand to bolster his case.

Assuming for the purposes of this opinion that the testimony of Whitney that the assignment was acknowledged on June 2, 1939, cannot be impeached

without clear and convincing proof, which appears to be the rule in several cases cited by the plaintiff in error, the finding of the court is still sustained. Taking into consideration that the parties to the assignment were brothers-in-law; that the Morris Plan judgment against Fred Thompson existed from February 25, 1939; that the defendant in error had been attempting to collect; the statement of the witness Northington that Fred Thompson had stated that he intended to assign the judgment to defeat the Morris Plan judgment, the finding that the assignment was executed in fraud of the defendant in error and without consideration is amply sustained. Plaintiff cites and relies upon Market Nat. Bank v. Raspberry, 34 Okla. 243, 124 P. 758, and Wilson's v. Jackson, 128 Okla. 299, 263 P. 107, holding that an assignment prior to a garnishment is valid. In both cases it is clearly stated that there was no charge that the prior assignments were without consideration or fraudulent. Here it is claimed it was both without consideration and fraudulent.

Various rulings of the trial court in receiving evidence are excepted to. The case was tried to the court without a jury. Without reciting these rulings in detail, it is enough to say that certain evidence was received over defendant's objection. Conceding that these objections were good and the evidence not properly admissible, nevertheless it will be presumed that such evidence so received was not considered by the court in making his findings and conclusions unless such inadmissible evidence was so essential that the court's findings could not have been made without it. George v. Odenthal, 58 N. D. 209, 225 N. W. 323, loc. cit. 325.

We are of the opinion, and hold, that the assignment comes within the rule of fraudulent conveyances as defined by this court in Wimberly v. Winstock, 46 Okla. 645, 149 P. 238; Miller v. Smith, 109 Okla. 203, 235 P. 225; Johnston v. State Bank of Commerce, 129 Okla. 46, 263 P. 123.

Finding no error in the proceedings requiring a reversal, the judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and BAYLESS, HURST, and ARNOLD, JJ., concur.